Patrick C. Dunican, Jr., Esq. (PD - 9401)
Robert C. Brady, Esq. (RB - 4814)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
Attorneys For Plaintiff
Ramada Worldwide Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ERS INVESTMENT, INC., a Colorado Corporation, EUGENE CHUN, and SEOK KANG, individually,<br><br>Defendants. | Civil Action No.<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc., by and through its counsel Gibbons P.C., by way of Verified Complaint hereby alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Ramada Worldwide Inc.("RWI") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2.  Defendant ERS Investment, Inc. ("ERS"), on information and belief, is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business at 11310 E. Stallion Dr., Parker Colorado.

3.  Defendant Eugene Chun, on information and belief, is a principal of ERS and a citizen of the State of Colorado, residing at 17943 E. Ida Ave., Aurora, Colorado.

4.  Defendant Seok Kang, on information and belief, is a principal of ERS and a citizen of the State of Colorado, residing at 11310 E. Stallion Dr., Parker, Colorado.

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

6.  This Court has personal jurisdiction over ERS by virtue of, among other things, Section 17.6.3 of the November 5, 2003 License Agreement by and between ERS and RWI (the "License Agreement"), described in more detail below, pursuant to which ERS has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

7.  This Court has personal jurisdiction over Eugene Chun and Seok Kang by virtue of, among other things, the terms of a Guaranty (the "Guaranty"), described in more detail below, pursuant to which Eugene Chun and Seok Kang acknowledged that they were personally bound by Section 17 of the License Agreement.

## ALLEGATIONS COMMON TO ALL COUNTS

## THE RAMADA MARKS

8.  RWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

9.  RWI has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Ramada Marks"), as well as the distinctive

2

Ramada® System, which provides hotel services to the public under the Ramada name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

10. RWI or its predecessors have continuously used each of the Ramada Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

11. RWI has given notice to the public of the registration of the Ramada Marks as provided in 15 U.S.C. § 1111.

12. RWI uses or has used the words "Ramada," "Ramada Plaza Hotel," "Ramada Inn," and "Ramada Limited," among others, as abbreviations of its brand name.

13. Through its franchise system, RWI markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their guest lodging services, RWI allows its franchisees to utilize the Ramada Marks and to promote the Ramada brand name.

14. RWI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Ramada Marks as distinctly designating RWI guest lodging services as originating with RWI.

15. The value of the goodwill developed in the Ramada Marks does not admit of precise monetary calculation, but because RWI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of RWI'S goodwill exceeds hundreds of millions of dollars.

3

#1138980 v1
101629-57821

16. The Ramada Marks are indisputably among the most famous in the United States.

## THE AGREEMENTS BETWEEN THE PARTIES

17. On or about November 5, 2003, RWI entered into the License Agreement with ERS for the operation of a 100-room guest lodging facility located at 2313 Soldier Spring Road, Laramie, Wyoming, Site No. 02823 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

18. Pursuant to Section 5 of the License Agreement, ERS was obligated to operate a Ramada guest lodging facility for a fifteen-year term, during which time ERS was permitted to use the Ramada Marks in association with the operation and use of the Facility as part of RWI's franchise system.

19. Pursuant to Section 3 of the License Agreement, ERS was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," "Schedule B" and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by RWI.

20. Pursuant to Section 3.4 of the License Agreement, ERS was required to operate and maintain the Facility in compliance with RWI's "System Standards," as defined in the License Agreement, including RWI's quality assurance requirements.

21. Pursuant to Section 4.8 of the License Agreement, RWI had the "unlimited right to conduct unannounced quality assurance inspections" of the Facility (and unlimited re-inspections if the Facility received a failing score on the inspection) to determine whether the Facility was in compliance with RWI's quality assurance requirements.

4

22. Pursuant to Sections 7, 18.5, and Schedule C of the License Agreement, ERS was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

23. Pursuant to Section 7.3 of the License Agreement, ERS was required to pay RWI interest, at the rate of 1.5% per month, on all past due amounts payable to RWI under the License Agreement, accruing from the due date until the amounts were paid.

24. Pursuant to Section 3.8 of the License Agreement, ERS was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by ERS at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

25. Pursuant to Section 3.8 of the License Agreement, ERS agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to Sections 3.8.2 and 4.8 of the License Agreement, ERS agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

26. Pursuant to Section 3.10 of the License Agreement, ERS agreed to obtain and maintain insurance coverage during the Term of the License Agreement.

27. Pursuant to Section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to ERS, for various reasons, including ERS's (a) failure to pay any amount due RWI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and (c) receipt

#1138980 v1
101629-57821

of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

28. Pursuant to Section 12.1 of the License Agreement, ERS agreed that, in the event of a termination of the License Agreement pursuant to Section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the License Agreement.

29. Section 18.1 specifically set liquidated damages for the Facility at $1,000.00 for each guest room of the Facility.

30. In addition, pursuant to the Satellite Connectivity Services Addendum (the "Addendum") entered into between RWI and ERS on November 5, 2003, and attached hereto as Exhibit B, ERS agreed that, in the event of a termination of the Addendum under Section 13(c), it would pay "Addendum Liquidated Damages" to RWI in the amount of $1,000.00. Pursuant to Section 13(a) of the Addendum, RWI had the right to terminate the Addendum upon the occurrence of any event described in the License Agreement which gave RWI the right to terminate.

31. Section 13 of the License Agreement specified ERS's obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Ramada Marks.

32. Pursuant to Section 17.4 of the License Agreement, ERS agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

#1138980 v1
101629-57821

33. Pursuant to Section 13(d) of the Addendum, ERS agreed that the non-prevailing party would "pay the costs and expenses, including reasonable attorneys' fees and the expenses, incurred by the prevailing party to enforce this Addendum."

34. Effective as of the date of the License Agreement, Eugene Chun and Seok Kang provided RWI with a Guaranty of ERS's obligations under the License Agreement. A true copy of the Guaranty is attached hereto as Exhibit C.

35. Pursuant to the terms of the Guaranty, Eugene Chun and Seok Kang agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement."

36. Pursuant to the terms of the Guaranty, Eugene Chun and Seok Kang acknowledged that they were personally bound by Section 17 of the License Agreement, including the Remedies provision contained in Section 17.4, which provides for payment of costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement.

## THE DEFENDANTS' DEFAULTS AND TERMINATION

37. Beginning in 2004, ERS repeatedly failed to operate the Facility in accordance with RWI's System Standards, in breach of its obligations under the License Agreement.

38. On July 1, 2004 and December 9, 2004, RWI conducted a quality assurance ("QA") inspection of the Facility. By letter dated February 15, 2005, a true copy of which is attached hereto as Exhibit D, RWI advised ERS that (a) the Facility received a failing score in the QA inspection and, as a result, ERS was in default of its obligations under the License Agreement, (b) the Facility would be re-inspected after at least 30 days from the date of the

notice, and (c) if the default was not cured, then certain special stipulations in the License Agreement would automatically terminate, and the License Agreement might be subject to termination.

39. On April 20, 2005, RWI conducted another QA inspection of the Facility. By letter dated June 21, 2005, a true copy of which is attached hereto as Exhibit E, RWI advised ERS that (a) the Facility received a failing score in the QA inspection and, as a result, ERS remained in default of its obligations under the License Agreement, (b) the Facility would be re-inspected after at least 90 days from the date of the notice, and (c) if the default was not cured, then certain special stipulations in the License Agreement would automatically terminate, and the License Agreement might be subject to termination.

40. By letter dated May 26, 2005, a true copy of which is attached hereto as Exhibit F, RWI advised ERS that (a) it was in breach of the License Agreement for failing to pay RWI Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with terms of the License Agreement, and (c) if the defaults were not cured, the License Agreement might be subject to termination.

41. By letter dated June 13, 2005, a true copy of which is attached hereto as Exhibit G, RWI advised ERS that (a) it was in default of its obligations under the License Agreement due to its failure to provide proof that it had obtained the minimum insurance coverage required by RWI, (b) it had 30 days to provide same, and (c) if the default was not cured, the License Agreement might be subject to termination.

42. By letter dated December 7, 2005, a true copy of which is attached hereto as Exhibit H, RWI advised ERS that (a) it was in continuing default of the License Agreement for failing to pay RWI Recurring Fees within the time period set forth in the May 26, 2005 default

#1138980 v1
101629-57821

letter, (b) as a result, its special stipulations under the License Agreement had expired and it was now required to perform its obligations under the License Agreement for the remainder of the term, (c) it had 10 days from the date of the notice within which to cure this monetary default, and (d) if the defaults were not cured, then the License Agreement might be subject to termination.

43. By letter dated December 29, 2005, a true copy of which is attached as Exhibit I, RWI terminated the License Agreement and advised ERS that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as part of the Ramada System, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Ramada, (b) all items bearing the Ramada Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Ramada had to be removed, (d) it was required to pay to RWI as liquidated damages for premature termination the sum of $101,000.00 ($100,000.00 as calculated pursuant to Sections 12.1 and 18.1 of the License Agreement, and $1,000.00, as set forth in Section 13 of the Addendum), (e) it had to de-identify the Facility within 14 days from the receipt of the notice, and (f) it was to immediately pay all outstanding Recurring Fees through the date it completed the de-identification process.

44. The termination of the License Agreement precludes ERS from any further use of the Ramada Marks in or around the Facility.

45. The termination of the License Agreement precludes ERS from any further use of the Ramada Marks to induce the traveling public to use the Facility in any way.

#1138980 v1
101629-57821

46. Since the termination of the License Agreement, ERS has continued to use the Ramada Marks to induce the traveling public to rent guest rooms at the Facility.

47. Since the termination of the License Agreement, ERS has used the Ramada Marks without authorization to rent rooms through, among other things, failure to remove Ramada signage and continuing to identify the Facility as a Ramada guest lodging facility in response to telephone inquiries as to whether or not the Facility is a Ramada.

48. By letters dated April 10, 2006 and April 25, 2006, true copies of which are attached as Exhibits J and K, respectively, RWI reiterated ERS's post-termination obligations under the License Agreement, including the requirement that, upon termination, ERS completely "de-identify" the Facility as a Ramada.

49. ERS has continued to misuse the Ramada Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada Marks.

## FIRST COUNT

50. RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 49 of the Verified Complaint.

51. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . shall be liable in a civil action by the registrant . . . ."

52. ERS marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Ramada Marks, and such use caused

#1138980 v1
101629-57821

and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

53. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

54. The acts of ERS in marketing, promoting, and renting rooms at the Facility, through and with the Ramada Marks, constitute:

(a) a false designation of origin;

(b) a false and misleading description of fact; and

(c) a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of ERS's Facility with RWI, and to cause confusion, or to cause mistake, or deception, to the effect that RWI sponsors or approves of the guest lodging services that ERS provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

55. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

#1138980 v1
101629-57821

56. ERS's use of the Ramada Marks in connection with goods and services at the Facility, after the Ramada Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Ramada Marks, and lessened and will continue to lessen the capacity of the Ramada Marks to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

57. ERS's ongoing acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

58. ERS's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on RWI.

59. RWI has no adequate remedy at law.

60. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), RWI demands judgment against ERS:

(a) Preliminarily and permanently restraining and enjoining ERS, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks; and

(b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

61. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 60 of the Verified Complaint.

12

#1138980 v1
101629-57821

62. Pursuant to Sections 3.8 and 4.8 of the License Agreement, ERS agreed to allow RWI to examine, audit, and make copies of ERS's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

63. ERS has engaged in acts and practices, as described, which amount to infringement of the Ramada Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

64. As a result, ERS owes restitution and the disgorgement of profits, in an amount unknown to RWI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from ERS.

**WHEREFORE**, RWI demands judgment ordering that ERS account to RWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks.

## THIRD COUNT

65. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 64 of the Verified Complaint.

66. On December 29, 2005, RWI terminated the License Agreement.

67. Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, ERS shall pay liquidated damages to RWI within 30 days of termination.

68. As a result of the termination of the License Agreement, ERS is obligated to pay RWI a total of $101,000.00 in liquidated damages, ($100,000.00 as calculated pursuant to

#1138980 v1
101629-57821

Sections 12.1 and 18.1 of the License Agreement, and $1,000.00, as set forth in Section 13 of the Addendum).

69. Notwithstanding RWI'S demand for payment, ERS has failed to pay RWI the liquidated damages as required in Section 12.1 of the License Agreement and Section 13 of the Addendum.

70. RWI has been damaged by ERS's failure to pay liquidated damages.

**WHEREFORE**, RWI demands judgment against ERS for liquidated damages in the amount of $101,000.00, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

71. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Verified Complaint.

72. By virtue of the premature termination of the License Agreement, RWI sustained a loss of future revenue over the remainder of the fifteen-year term of the License Agreement.

73. If the Court determines that ERS is not liable to pay RWI liquidated damages as required by Section 12.1 of the License Agreement and Section 13 of the Addendum, then, in the alternative, ERS is liable to RWI for actual damages for the premature termination of the License Agreement.

74. RWI has been damaged by ERS's breach of its obligation to operate a Ramada guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, RWI demands judgment against ERS for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

#1138980 v1
101629-57821

## FIFTH COUNT

75. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 74 of the Verified Complaint.

76. Pursuant to Sections 7, 18.5, and Schedule C of the License Agreement, ERS was obligated to remit Recurring Fees to RWI.

77. Despite its obligation to do so, ERS failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $140,449.76.

78. ERS's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged RWI.

**WHEREFORE**, RWI demands judgment against ERS for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

79. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 78 of the Verified Complaint.

80. At the time of the termination of the License Agreement, ERS was obligated to pay RWI Recurring Fees.

81. Despite its obligation to do so, ERS failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $140,449.46, as well as liquidated damages totaling $101,000.00.

82. In addition, ERS benefited from its wrongful use of the Ramada Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to RWI in return for that benefit.

#1138980 v1
101629-57821

83. ERS's failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

**WHEREFORE**, RWI demands judgment against ERS for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, costs of suit, and all royalties and other Recurring Fees that should be paid to compensate RWI for the period during which ERS misused the Ramada Marks and was thereby unjustly enriched, together with interest and costs of suit.

### SEVENTH COUNT

84. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 84 of the Verified Complaint.

85. Pursuant to the terms of the Guaranty, Eugene Chun and Seok Kang agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of ERS under the License Agreement.

86. Despite their obligation to do so, Eugene Chun and Seok Kang have failed to make any payments or perform or cause ERS to perform each obligation required under the License Agreement.

87. Pursuant to the Guaranty, Eugene Chun and Seok Kang are liable to RWI for ERS's liquidated damages in the amount of $101,000.00, or actual damages in an amount to be determined at trial, for ERS's Recurring Fees due and owing under the License Agreement, and for those additional Recurring Fees attributable to the period during which ERS has misused the Ramada Marks.

**WHEREFORE**, RWI demands judgment against Eugene Chun and Seok Kang for damages in the amount of:

#1138980 v1
101629-57821

(a) All liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit; and

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate RWI for the period during which ERS misused the Ramada Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.

                                 **GIBBONS P.C.**
                                 Attorneys for Plaintiff
                                 Ramada Worldwide Inc.

                                 _____
                                 Patrick C. Dunican, Jr., Esq.
                                 Robert C. Brady, Esq.

Dated: March 7, 2007

## VERIFICATION

Valerie Capers Workman of full age hereby certifies to the Court as follows:

1. I am the Vice President, Franchise Administration of Ramada Worldwide Inc. ("RWI"), the plaintiff in the within action.

2. I am authorized to act on behalf of RWI with respect to the acts complained of in the within Verified Complaint.

3. I have read the foregoing Verified Complaint, and state that the allegations set forth therein are true.

I certify that the foregoing statements made by me are true. I am aware that should any of the foregoing be willfully false I am subject to punishment.

Valerie Capers Workman

Dated: ~~January~~ March 5, 2007

#1138980 v1
101629-57821

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**GIBBONS P.C.**
Attorneys for Plaintiff
Ramada Worldwide Inc.

*[signature]*

Patrick C. Dunican, Jr., Esq.
Robert C. Brady, Esq.

Dated: March 7, 2007

#1138980 v1
101629-57821