**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation, | : : : : | |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civ. A. No. 07-1095 (WHW) |
| ERS INVESTMENTS INC., a Colorado Corporation, EUGENE CHUN, and SEOK KANG, individually, | : : : : : | |
| Defendants. | : : | |

**<u>Walls, Senior District Judge</u>**

Plaintiff Ramada Worldwide Inc. ("Ramada") moves for final judgment by default against ERS Investment Inc. ("ERS") pursuant to Federal Rules Civil Procedure 55(b)(2). ERS has not opposed the motion. This motion is decided without oral argument pursuant to Federal Rules Civil Procedure 78. Ramada's motion for default judgment is granted.

## <u>BACKGROUND</u>

Ramada, a Delaware corporation with its principal place of business in Parsippany, New Jersey, is a franchisor of lodging facilities. (Dkt. Entry No. 1, Complaint ¶ 1 (filed on Mar. 8, 2007) ("Compl.").) Defendant ERS is a Colorado corporation with its principal place of business in Parker, Colorado. (<u>Id.</u> at ¶ 2.)

This matter arises out of a license agreement dated November 5, 2003 between Ramada and ERS (the "License Agreement") for the operation of a one-hundred-room quest lodging

NOT FOR PUBLICATION

facility located at 2313 Soldier Spring Road, Laramie, Wyoming (the "Facility").  (Compl. ¶ 17.)

ERS was obligated to operate the Facility as a Ramada guest lodging facility for 15 years, during

which time ERS was permitted to use the Ramada Marks in association with its operation of the

Facility as part of Ramada's franchise system.  (Id. at ¶ 18.)

      The License Agreement imposed contractual obligations on ERS.  Under section 3, ERS

was required to make renovations to the Facility in order to bring it into compliance with

"System Standards," "Approved Plans," and/or a "Punch List," all of which were either defined

in or attached to the License Agreement.  (Affidavit of K. Noel Hedges ¶ 7 (Dkt. Entry No. 8,

filed Nov. 14, 2007) ("Hedges Aff.").)  Under section 4.8, ERS must ensure that the Facility

achieved and maintained certain scores on periodic quality assurance inspections, which Ramada

was entitled to conduct.  (Id. at ¶¶ 7-9.)  Under section 3.10 of the License Agreement, ERS was

required to obtain and maintain insurance coverage during the entire term of the License

Agreement.  (Id. at ¶ 14.)

      According to sections 7, 8.15 and Schedule C of the License Agreement, ERS was

required to make certain periodic payments to Ramada for royalties, service assessments, taxes,

interest, reservation system user fees, annual conference fees, and other charges (collectively, the

"recurring fees").  (Id. at ¶ 10.)  ERS was also required to maintain accurate financial information

pertaining to the Facility's gross room revenue and permit Ramada to audit that information.  (Id.

at ¶ 13.)

      Section 11.2 of the License Agreement governed the termination rights of Ramada,

including the right to collect liquidated damages.  Under this section, Ramada could terminate

NOT FOR PUBLICATION

the License Agreement, with notice to ERS, for various reasons including: (1) ERS's failure to pay any amount due Ramada under the License Agreement; (2) ERS's failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from Ramada specifying one or more defaults under the License Agreement; and (3) receipt of two or more notices of default under the License Agreement in any one year period.  (Id. at ¶ 15.)  If Ramada terminated the License Agreement under section 11.2, ERS was obligated to pay Ramada liquidated damages in the amount of $100,000.00.  (Id. at ¶ 16-17.)

       If the parties pursued litigation to enforce provisions in the License Agreement, the agreement required the non-prevailing party to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party."  (Id. at ¶ 19.)  Under section 13, upon termination of the License Agreement, ERS was required to cease use of all Ramada marks.  (Id. at ¶ 24.)

       About November 5, 2003, Ramada entered into the Satellite Addendum ("Addendum") with ERS.  (Id. at ¶ 5.)  Under section 13(a) of the Addendum, Ramada would have the right to terminate the Addendum if ERS was in default under the License Agreement, or if any event giving Ramada the right to terminate the License Agreement occurred.  (Id. at ¶ 21.)  ERS agreed that if Ramada terminated the Addendum under section 13(a), ERS would pay Ramada liquidated damages in the amount of $1,000.  (Id. at ¶ 22.)  If the parties pursued litigation to enforce provisions in the Addendum, the Addendum required the non-prevailing party to "pay

NOT FOR PUBLICATION

the costs and expenses, including reasonable attorneys' fees and expenses, incurred by the

prevailing party."  (Id. at ¶ 23.)

On July 1, 2004 and December 9, 2004, Ramada conducted quality assurance inspections

("QA inspections") of the Facility.  By letter dated February 15, 2005, Ramada advised ERS that:

(a) the Facility received a failing score in each of those QA inspections and, as a result, ERS was

in default of its obligations under the License Agreement; (b) the Facility would be re-inspected

at least 30 days after the date of the notice; and (c) if the default was not cured by the time of the

re-inspection, then the special flat fee arrangement set forth in section 18.5 of the License

Agreement would automatically terminate, and the License Agreement might be subject to

termination.  (Id. at ¶ 27.)  On April 20, 2005, Ramada conducted another QA inspection of the

Facility.  (Id. at ¶ 28.)  By letter dated June 21, 2005, Ramada advised ERS that (a) the Facility

received a failing score in the QA inspection and, as a result, ERS remained in default of its

obligations under the License Agreement; (b) the Facility would be re-inspected at least 90 days

from the fate of the notice; and (c) if the default was not cured, then the special flat fee

arrangement set out in section 18.5 of the License Agreement would automatically terminate, and

the License Agreement might be subject to termination.  (Id. at ¶ 28.)

When ERS failed to provide Ramada with proof that ERS had obtained and maintained

the requisite amount of insurance for the Facility, pursuant to section 3.10 of the License

Agreement, Ramada notified ERS of another default.  By letter dated June 13, 2005, Ramada

advised ERS that (a) it was in default of its obligations under the License Agreement due to its

failure to provide proof that it had obtained the minimum insurance coverage required by

-4-

NOT FOR PUBLICATION

Ramada; (b) it had 30 days to provide the same; and (c) if the default was not cured, the License

Agreement might be subject to termination.  (Id. at ¶ 29.)

When ERS failed to pay Ramada the recurring fees, Ramada notified ERS of its default.

By letter dated May 26, 2005, Ramada advised ERS that (a) it was in breach of the License

Agreement for failing to pay Ramada recurring fees; (b) in accordance with the terms of the

License Agreement, ERS had 30 days in which to cure default; and (c) if the default was not

cured, then the special flat fee arrangement set out in section 18.5 of the License Agreement

would automatically terminate, and the License Agreement might be subject to termination.  (Id.

at ¶ 30.)  After receiving notice, ERS did not cure its default.  By letter dated December 7, 2005,

Ramada advised ERS that (a) ERS was in continuing default of the License Agreement for

failing to pay Ramada recurring fees within the time period set forth in the May 26, 2005 default

letter; (b) as a result, the special flat fee arrangement set out in section 18.5 of the License

Agreement had terminated and ERS was now required to perform its obligations under the

License Agreement for the remainder of the term; (c) ERS had 10 days from the date of the

notice within which to cure this monetary default; and (d) if the defaults were not cured, then the

License Agreement might be subject to termination.  (Id. at ¶ 31.)

Ramada exercised its right to terminate the License Agreement after ERS had failed to

cure its defaults.  By letter dated December 29, 2005, Ramada advised ERS that (a) the License

Agreement was terminated as a result of ERS's failure to cure its various defaults; (b) ERS was

to immediately discontinue the use of all trade names, service marks, signs, and other forms of

advertising, and other indicia of operation as part of the Ramada System, and to discontinue the

**NOT FOR PUBLICATION**

use of other materials on the premises so as to effectively distinguish the same from its former

appearance as a Ramada; (c) all items bearing the Ramada Marks had to be removed; (d) all signs

and any listings in directories and similar guides in which the Facility was identified as a Ramada

had to be removed; (e) ER was required to pay Ramada $101,000.00 in liquidated damages

($100,000.00 as calculated pursuant to sections 12.1 and 18.1 of the License Agreement, and

$1,000.00 as set forth in section 13 of the Satellite Addendum); (f) ERS had to fully de-identify

the Facility within 14 days from the receipt of the notice; and (g) ERS was to immediately pay all

outstanding recurring fees through the date it completed the de-identification process.  (Id. at ¶

32.)

Upon termination of the License Agreement, ERS was no longer authorized to use the

Ramada marks in or around the Facility, or to otherwise identify the Facility with Ramada.  (Id.

at ¶¶ 32-33.)  Nevertheless, ERS continued to use the Ramada marks after the termination of the

License Agreement.  (Id. at ¶¶ 32, 35.)

Ramada filed its Complaint on March 8, 2007.  On June 14, 2007, service of the

Summons and Complaint was effectuated on ERS by personal service on its registered agent,

Carl Ream.  (Affidavit of K. Robert C. Brady ¶ 3 (Dkt. Entry No. 8, filed Nov. 14, 2007) ("Brady

Aff.").)  On July 17, 2007, Ramada requested the Clerk of the Court to enter default against ERS.

(Id. at ¶ 7.)  The Clerk of the Court entered default on the same day.  To date, ERS has not

entered an appearance by counsel in this action and has not answer nor otherwise filed any

motions in response to the Complaint.  (Id. at ¶ 8.)  By request from Ramada, the Court entered

an Order staying this action as to defendants Seok Kang and Eugene Chun during the pendency

NOT FOR PUBLICATION

of their respective bankruptcy proceedings.  (July 24, 2007 Order to Stay Proceedings (Dkt. Entry

No. 7, issued Jul. 24, 2007).)  The Order provided that "the matter shall proceed as to Defendant

ERS Investment Inc. in the normal course."  Id.


## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment.

The party against whom default judgment is requested must have been properly served with

process.  Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco,

Inc., Civ. A. No. 99-755, 1999 WL 269903, at * 1 (E.D. Pa. Apr. 28, 1999).  Before a default

judgment may be entered by the court, the moving party must have obtained an entry of default

pursuant to Rule 55(a).  See Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209,

1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2682, at 13

(3d ed.1998).

A party seeking default judgment is not entitled to such relief as a matter of right,

however, even where the defendant was served with process, and where the default has been

noted pursuant to Rule 55(a).  See, e.g., Cableco, 1999 WL 269903, at *3 (citing Petrucelli v.

Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)).  Rather, a court is "required to

exercise sound judicial discretion in deciding whether to . . . enter default judgment."  Id.

Default judgment is generally disfavored because it prevents resolution of a plaintiff's claims on

the merits.  Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

**NOT FOR PUBLICATION**

Thus, a district court must apply a six-part test to determine the propriety of entering a default judgment.  Poulis v. State Farm & Casualty Co., 747 F.2d 863 (3d Cir.1984).  The Poulis factors are (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) the history of noncompliance; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Id. at 868.  No single Poulis factor is determinative and dismissal may be appropriate even if some of the factors are not met.  See Mindek v. Rigaitti, 964 F.2d 1369, 1373 (3d Cir. 1992).

**DISCUSSION**

**A.      Liability**

The record indicates that ERS was properly served with the Complaint and this motion for default judgment.  The record also indicates that the Clerk of the Court has entered default against ERS.  The Court is satisfied that ERS has had notice of this action and this motion for default judgment and has chosen not to respond.

Because ERS has failed to appear in this case, there is no indication of the meritoriousness of any ERS' defense.  It is difficult for the Court to consider the Poulis factors. The Third Circuit allows district courts to enter a default judgment in a case like this one:

> In most instances where a party's right to prosecute or defend would be
> terminated as a sanction, the moving party has the burden of creating a record
> showing the appropriateness of this ultimate sanction and the district court has the
> responsibility of making a determination on that issue in light of considerations

**NOT FOR PUBLICATION**

> like those articulated in <u>Poulis</u>.  (Citations omitted.)  When a defendant fails to appear and perhaps under other circumstances covered by Rule 55, the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.  Even in those situations, however, consideration of <u>Poulis</u> type factors is required if a motion to lift the default is filed under Rule 55(c) or Rule 60(b) and a record is supplied that will permit such consideration.

<u>Anchorage Assocs. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

Accordingly, this Court grants Ramada's motion for default judgment on the basis that a default has been entered.

**B.      Liability**

"A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983).)  As described, ERS failed to ensure the Facility's compliance with Ramada's System Standards including its quality assurance requirements as required by section 3 of the License Agreement. This constituted a default under section 11.  ERS failed to remedy this default within 30 days of receiving (repeated) written notices from Ramada, and thus Ramada was justified in terminating the License Agreement under section 11.2.

Furthermore, as also described, despite receiving several written notices, ERS failed to pay all past-due recurring fees to Ramada upon termination of the License Agreement. This failure constitutes a default under section 11.1.  As a result, Ramada had additional grounds to terminate the License Agreement under section 11.2.  ERS also failed to meet its obligation under section 3.10 to provide proof that it had obtained the requisite amount of insurance for the

NOT FOR PUBLICATION

Facility.  Ramada exercised its right to terminate the License Agreement because ERS's default on the QA inspection, proof of insurance and payment of the recurring fees.  Accordingly, the Court finds ERS liable for breach of the License Agreement.

Ramada has also established violations of sections 32 and 43(a) of the Lanham Act.  A violation of section 43(a) of the Lanham Act is established if ERS's use of the Ramada marks is "likely to create confusion concerning the origin of the goods or services."  S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 375 (3d Cir. 1992).  To prevail on an infringement claim under section 32 of the Act, Ramada must demonstrate as well that ERS's use of the marks was unauthorized.  Id.

The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 195 (3d Cir.1990).  Ramada and ERS were using the same legally protectable trademark, owned by Ramada. There is no question that their concurrent use is highly likely to cause consumer confusion about ERS's affiliation with Ramada.  Ramada has shown a violation of section 43(a).

It is also apparent that ERS's continued use of the trademark was unauthorized, in violation of section 32.  See 15 U .S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant-(a) use in commerce any reproduction ... of a registered mark ... in connection with which such use is likely to cause confusion.");  ITT Industries, Inc. v. Wastecorp, Inc., 87 F. App'x. 287, 293 (3d Cir. Feb. 6, 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public. It has been described

-10-

**NOT FOR PUBLICATION**

as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor."). Ramada formally terminated both the License Agreement and the Addendum on December 29, 2005, rendering any subsequent use of the Ramada marks by ERS violative of section 32. ERS continued to use those marks until at least May 1, 2007. Thus, Ramada has shown a violation of section 32.

The public concern for enforcing the Lanham Act and contracts such as that here weighs in favor of entering default judgment. The failure to enter a default judgment would prejudice Ramada in its ability to enforce its rights under the Lanham Act and the License Agreement. There is no evidence that to explain ERS's failure to answer the summons and Complaint in this matter or to respond to the motion for default judgment. There is no evidence of good-faith, mistake, or excusable neglect. After reviewing Ramada's Complaint and the affidavits of Robert C. Brady and K. Noel Hedges in support of the motion for default judgment, the Court is satisfied that Ramada has sufficiently established the factors necessary to warrant entry of a default judgment on its breach of contract and Lanham Act claims.

**C.     Damages**

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. <u>Comdyne I</u>, 908 F.2d at 1149. Under Rule 55(b)(2), a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages." There are certain limited situations, however, where a district court can enter a final judgment without requiring

-11-

NOT FOR PUBLICATION

further evidence of damages.  KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).

First, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149.  A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default ."  KPS Assocs., 318 F.3d at 19.  "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof."  Id. at 19-20 (internal quotations omitted).

Second, claims for liquidated damages also do not require further evidentiary inquiry.  Id. at 20 (citing 46 Am. Jur. 2d Judgments § 313).  Typically, liquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law.  Id.

Here, Ramada seeks a combination of liquidated and unliquidated damages.  Ramada seeks (1) $133,000.00 for liquidated damages (principal plus prejudgment interest); (2) $188,904.93 for recurring fees (principal plus prejudgment interest); (3) $1,345.00 in liquidated damages under the Satellite Addendum (principal plus prejudgment interest);(d) $496,522.23 in infringement damages under the Lanham Act; and (e) reasonable attorneys' fees and costs.  After reviewing the License Agreement, the Satellite Addendum and the affidavits of K. Noel Hedges and Robert C. Brady, the Court is satisfied that Ramada's requests for liquidated damages and recurring fees are for sums certain. The liquidated damages are an agreed upon amount, while the recurring fees can by computed by formulas specified in the License Agreement.

NOT FOR PUBLICATION

As to infringement damages, section 35 of the Lanham Act allows a victorious plaintiff to recover, inter alia, "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a).  Additionally, a district court may, depending on the circumstances of the case, use its discretion to treble the actual damage award.  Id.  To determine the amount of damages sustained, some courts have used the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement.  See A & H Sportswear Co. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208-08 (3d Cir. 1999) (en banc); see also Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." (internal quotations omitted)).

Because Ramada does not have the benefit of discovery and access to ERS's financial information, Ramada requests that this Court accept calculations of lost royalties based on the average recurring fees incurred by ERS on its reported gross room revenue.  Ramada Inns, 804 F.2d at 1564 (calculations based on historical data and other estimated figures are acceptable measures of damages).  Ramada's records show that, for the last twenty-four (24) months when ERS reported revenues for the Facility to Ramada, ERS owed an average recurring fees of $9,735.73 per month.  (Hedges Aff. ¶ 46.)  Based on that, Ramada estimates the amount of fees that would have been paid on gross room revenue earned at the Facility during the period of infringement (December 30, 2005, through at least May 1, 2007) to be $165,507.41.  (Id. at ¶ 47.) Ramada states that this is the only available evidence upon which to base an estimate of infringement damages.

-13-

NOT FOR PUBLICATION

Ramada requests the Court to treble the amount of $165,507.41 as allowed by section 35 of the Lanham Act for ERS's wilful infringement of Ramada's marks.  15 U.S.C. § 1117(b) provides, in pertinent part:

> In assessing damages under [15 U.S.C. § 1117(a)] of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114 (1)(a) of this title or section 220506 of title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116 (d) of this title), in connection with the sale, offering for sale, or distribution of goods or services . . . .

15 U.S.C. § 1117(b) (emphasis added).  ERS has received notice that Ramada had terminated the License Agreement by letter dated December 29, 2005 and that ERS should cease using Ramada's marks.  Nevertheless, ERS continued to used Ramada's marks.  In a letter to ERS dated April 10, 2006, Ramada reiterated ERS's post-termination obligations and to cease using Ramada's marks.  Notwithstanding these cease and desist letters, ERS continued to use Ramada's marks as of May 1, 2007.

In the absence of better evidence to prove lost royalties, Ramada calculations for infringement damages based on the average recurring fees incurred by ERS on its reported gross room revenue are acceptable.  Ramada also has shown that ERS has intentionally infringed Ramada's marks.  Accordingly, the Court grants Ramada's request for infringement damages in the amount of $496,522.23.

Both the License Agreement, the Addendum and the Lanham Act provide that the prevailing party is entitled to reasonable attorneys' fees.  Specifically, section 17.4 of the License Agreement provides that "[t]he non-prevailing party will pay all costs and expenses, including

-14-

NOT FOR PUBLICATION

reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect

amounts owed under this Agreement."  Section 13(d) of the Addendum provides a similar

provision.  Section 35 of the Lanham Act provides that the Court may award attorneys' fees "in

exceptional cases" for violations of 15 U.S.C. 1125(a).  15 U.S.C. § 1117(a).   Ramada argues

that this is an exception case because of the duration of ERS's intentional infringement of

Ramada's marks.

Although the Court agrees that Ramada is entitled to reasonable attorneys' fees, Ramada

has not provided its counsel's billing records.  Pursuant to L. Civ. R. 54.2, the Court requests that

Ramada submit an application for the Court's review, detailing how attorneys' fees and costs

were calculated, within twenty (21) days of the date of this Opinion.

## CONCLUSION

Ramada's motion to for judgment by default is granted.

January 16, 2008                              s/William H. Walls
                                              United States Senior District Judge